Richard S. **BRADDOCK**, Jay S. Walker, N.J. Nicholas, Jr., Defendants Below, Appellants,

and

Priceline.com Incorporated, a Delaware Corporation, Nominal Defendant Below, Appellant,

v.

Mark **ZIMMERMAN**, Derivatively on Behalf of Nominal Defendant Priceline.com Incorporated, Plaintiff Below, Appellee.

No. 489, 2005.

Supreme Court of Delaware.

Submitted: June 28, 2006.
Decided: Sept. 12, 2006.

Bruce L. Silverstein, Esquire, and Danielle Gibbs, Esquire, Young, Conaway, Stargatt & Taylor, Wilmington, Delaware and Daniel Slifkin, Esquire (argued), Cravath, Swaine & Moore, New York, New York, for appellants, Richard S. Braddock and Priceline.com.

Anne C. Foster, Esquire, Richards, Layton & Finger, Wilmington, Delaware, and Jeanne Irving, Esquire, of Hennigan, Bennett & Dorman LLP, Los Angeles, California, for appellants, Jay S. Walker and N.J. Nicholas, Jr.

R. Bruce McNew, Esquire, Taylor & McNew, Greenville, Delaware and Eric L. Zagar, Esquire (argued), Schiffrin & Barroway, Radnor, Pennsylvania, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

This is an interlocutory appeal from an order by the Court of Chancery that granted the plaintiff's motion for leave to file a second amended complaint. At issue is the legal meaning and effect of a Court of Chancery order dismissing a derivative suit "without prejudice" on Rule 23.1 "demand required" grounds. This appeal also requires our analysis of the Court of Chancery's holding in *Harris v. Carter*[1] that a plaintiff does not need to make a demand

---

1. *Harris v. Carter,* 582 A.2d 222 (Del.Ch. 1990).

before amending a derivative complaint where a new board of directors comes into power, if the amended derivative claims were "validly in litigation" before the new board assumed control.

In this proceeding, we conclude the ambiguous record permitted the filing of an amended complaint. We hold prospectively, however, that a dismissal without prejudice and without explicit leave to amend operates as a final judgment. We approve the Court of Chancery's rationale in *Harris v. Carter*.[2] We further hold that, for purposes of determining whether demand is required before filing an amended derivative complaint, the term "validly in litigation" means a proceeding that can or has survived a motion to dismiss. This latter holding requires us to reverse the interlocutory order of the Court of Chancery and to remand this matter for further proceedings in accordance with this opinion.

### Procedural History

The plaintiff, Mark Zimmerman (the "Plaintiff") alleges, in this derivative action, that the defendants, Richard S. Braddock, Jay S. Walker, and N.J. Nicholas, Jr. (collectively, the "Selling Defendants"), all directors of the Nominal Defendant priceline.com, Inc. ("Priceline" or the "Company"), engaged in insider trading of the Company's stock and misappropriated the Company's confidential information. The other defendants, who with the Selling Defendants constituted Priceline's board of directors are: Daniel H. Schulman, Paul A. Allaire, Ralph M. Bahna, Paul J. Blackney, William E. Ford, Marshall Loeb, Nancy B. Peretsman, and Heidi G. Miller (collectively, the "Individual Defendants").

The Plaintiff filed his original complaint on November 1, 2000. After the defendants moved to dismiss that complaint, the Plaintiff filed an amended complaint on June 21, 2001 (the "First Amended Complaint"). The defendants again moved to dismiss. On December 20, 2002, the Court of Chancery entered an order dismissing the First Amended Complaint in its entirety for failure to comply with the demand requirement of Court of Chancery Rule 23.1 (the "Dismissal Order"). The Dismissal Order was "without prejudice." The Plaintiff did not seek to appeal the Dismissal Order.

On April 25, 2003, the Plaintiff filed a second amended complaint (the "Second Amended Complaint"). The defendants took the position that the Plaintiff must file a new complaint because the First Amended Complaint had been dismissed in its entirety and the Dismissal Order was final. The Plaintiff then filed a motion pursuant to Court of Chancery Rule 15 for leave to file the Second Amended Complaint. The defendants opposed that motion.

When the Plaintiff filed his original complaint on November 1, 2000, Priceline had an eleven-member board of directors (the "Old Board"). Between November 1, 2000 and April 25, 2003, five members of the Old Board were replaced by new directors. Two additional board seats were also created and filled with new directors. By the time the plaintiff filed his Second Amended Complaint on April 25, 2003, Priceline had a thirteen-member board of directors (the "New Board") that included only six members of the Old Board. Accordingly, it had a seven-member majority of new directors.

Following oral argument, the Court of Chancery issued a bench ruling that dismissed three of the four counts in the Second Amended Complaint for failure to make a demand upon the New Board. It

2. *Id.*

reserved decision on the remaining count, Count I. The Court of Chancery subsequently issued a letter opinion granting the Plaintiff's motion for leave to file the Second Amended Complaint as to Count I. The Court of Chancery held that demand as to Count I was properly excused with respect to the Old Board, *i.e.*, the Priceline board of directors in place at the time the original complaint was filed.

### Issues on Appeal

The defendants contend the Court of Chancery erred when it granted the Plaintiff leave to file the Second Amended Complaint after the dismissal without prejudice of the Plaintiff's First Amended Complaint. The defendants submit that the entry of the Dismissal Order and the expiration of the reargument period, rendered the Dismissal Order a final order that extinguished the Court of Chancery's authority to entertain any amendment of the dismissed complaint. Because amendment was improper, the defendants argue that the Plaintiff was required to file a new complaint to reassert any claims.

Alternatively, the defendants argue that the Court of Chancery erred when it based its demand futility analysis of Count I of the Second Amended Complaint on the composition of the Priceline board of directors as it existed when the original complaint was filed. The defendants contend that, if an amendment of the dismissed complaint was permissible, demand futility should have been assessed with respect to the Priceline board in place at the time the Plaintiff filed the Second Amended Complaint. Because it is undisputed that a majority of the directors in office at the time the Second Amended Complaint was filed were disinterested and capable of exercising independent judgment with respect to the Plaintiff's claims, the defendants submit that the Plaintiff cannot satisfy the demand requirement of Rule 23.1.

The Court of Chancery rejected both of the defendants' arguments. First, it ruled that the Dismissal Order did not operate as a final judgment of dismissal and was understood, at least implicitly, to allow an amendment of the First Amended Complaint. Second, it ruled that because Count I was part of the First Amended Complaint, it was "validly in litigation" at the time the Second Amended Complaint was filed. Therefore, it assessed demand futility based on the Old Board in place when that Complaint was filed rather than on the New Board in place when the Second Amended Complaint was filed.

### Final Judgment Dispute

 Under Delaware law, the Court of Chancery retains jurisdiction over an action until it enters a final judgment.[3] "A final judgment is generally defined as one that determines the merits of the controversy or defines the rights of the parties and leaves nothing for future determination or consideration."[4] "In short, a final judgment is one that determines all the claims as to all the parties. The test for whether an order is final ... is whether the trial court has clearly declared its intention that the order be the court's 'final act' in a case."[5]

---

**3.** *See, e.g., J.I. Kislak Mortgage Corp. v. William Matthews, Builder, Inc.*, 303 A.2d 648, 650 (Del.1973).

**4.** *Tyson Foods, Inc. v. Aetos Corp.*, 809 A.2d 575, 579 (Del.2002) (citing *Showell Poultry, Inc. v. Delmarva Poultry Corp.*, 146 A.2d 794, 796 (Del.1958); *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

**5.** *Id.* (citing *J.I. Kislak Mortgage Corp. v. William Matthews, Builder, Inc.*, 303 A.2d at 650.).

The defendants argue that the Court of Chancery's dismissal of the First Amended Complaint comports with the definition of a final judgment because the Court of Chancery held "that the Plaintiff has not alleged sufficient facts with particularity to excuse demand and, therefore, this action must be dismissed under Rule 23.1."[6] The defendants contend that that the Dismissal Order "plainly" dismissed the "action" in its entirety. The defendants submit that a dismissal of a complaint in its entirety, even though without prejudice, is nevertheless a dismissal, except that the Plaintiff's right to file a new complaint is not precluded by *res judicata*.[7]

The Plaintiff responds that permitting a second amendment was proper because "the Court of Chancery's Order dismissing the First Amended Complaint clearly was not a final judgment." The Plaintiff relies upon the fact that the order dismissing the First Amended Complaint was without prejudice. Therefore, the Plaintiff asserts, a dismissal without prejudice afforded him "the opportunity to submit a motion for leave to file the Second Amended Complaint."

### Rule 15(aaa) Confusion

The confusion in the record of this proceeding about the finality of the Dismissal Order is attributable to the fact that the amendment to the original complaint was filed immediately after the Court of Chancery adopted a new rule of procedure. Effective June 1, 2001, the Court of Chancery adopted Rule 15(aaa) governing amendments to pleadings. Three weeks later, on June 21, 2001, and in response to a motion to dismiss, the Plaintiff filed the First Amended Complaint in this proceeding.

The defendants moved to dismiss the First Amended Complaint. At the April 23, 2002 hearing on that motion, the Plaintiff's counsel raised the issue of whether, pursuant to Rule 15(aaa), the Plaintiff should be allowed an opportunity to amend the First Amended Complaint if the Court of Chancery "would deem that plaintiff's allegations are insufficient in some way now either on demand or on the claims." The Court of Chancery replied:

> My recollection is … that [Rule 15(aaa)] went into effect before [the First Amended Complaint was filed], but that still doesn't mean I don't have discretion to allow an amendment.
>
> \* \* \*
>
> I am going to defer any formal consideration of the Rule 15–aaa application, in part because I think I first need to figure out what I'm going to do with [the motion to dismiss]. It may or may not become an issue, but if the case is dismissed, I'm sure I'll hear from plaintiff's counsel seeking leave to amend and we'll deal with it on that basis as to whether I should provide relief or not.
>
> I don't know any better way of doing it. I don't certainly feel competent or qualified at this point to exercise my discretion as to what I ought to do. I want to hear more about it if I have to, and I think we have spent enough time on this today.

The foregoing comments demonstrate that the Court of Chancery did not contemplate that an order dismissing the First Amended Complaint would necessarily preclude another motion to amend, notwithstanding the recent adoption of Rule 15(aaa). The Court of Chancery specifically stated, "I want to hear more about"

---

**6.** *Zimmerman v. Braddock,* 2002 WL 31926608, at \*1 (Del.Ch. Dec.20, 2002).

**7.** *Elfenbein v. Gulf & W. Indus., Inc.,* 590 F.2d 445, 449 (2d Cir.1978).

Plaintiff's request for leave to amend pursuant to Rule 15(aaa), and if the First Amended Complaint were dismissed, "I'll hear from plaintiff's counsel seeking leave to amend and we'll deal with it on that basis as to whether I should provide relief or not."

Eight months later, the Court of Chancery subsequently dismissed the First Amended Complaint *without prejudice.* Citing Rule 15(aaa), the court held that "dismissal with prejudice would not 'be just under the circumstances' because of the complex and intertwined relationships among Priceline, the Individual Defendants, and the various entities with which they are associated and because of the apparently non-public status of certain facts, the absence of which may have materially affected the outcome."[8] Thereafter, when considering the Plaintiff's motion to file the Second Amended Complaint, the Court of Chancery stated: "In an effort to deal with Rule 15(aaa), I dismissed Plaintiffs [first] amended complaint without prejudice."

### *Confusion Precludes Finality*

The Third Circuit Court of Appeals has held that a dismissal "without prejudice" amounts to an "implicit invitation" to the plaintiff to amend the complaint.[9] Consistent with the Third Circuit's holding in *Borelli v. City of Reading,* the record reflects that the Court of Chancery thought its dismissal of the First Amended Complaint *without prejudice* pursuant to Rule 15(aaa) would allow the Plaintiff to submit a motion for leave to file the Second Amended Complaint. In ruling on the motion for leave to file a second amendment, the Court of Chancery also concluded that all parties understood that the Plaintiff would seek to amend his pleading:

As to Count I, I am going to allow plaintiff to seek to amend his amended complaint .... I do that on the basis that it was the understanding of the parties that the plaintiff would be filing a motion to amend. The plaintiff and his counsel obviously believed that he would be able to amend the complaint in the same action. Based on communication that occurred between counsel after my dismissal of the amended complaint, I'm satisfied that it was the defendants' understanding as well.

The Court of Chancery correctly concluded that Rule 15(aaa) permits it to grant leave to amend after a complaint is dismissed *without prejudice.* To accomplish that result, however, the order of dismissal without prejudice should have expressly authorized the Plaintiff to file an amended complaint by a date certain. The following language is a good example of the proper expression:

[i]n accordance with Rule 15(aaa) of the Court of Chancery Rules, the dismissal will be without prejudice, as good cause has been shown to support a finding that dismissal with prejudice would not be just under the circumstances. Therefore, the court grants the [plaintiff] leave to file an amended complaint within 30 days of the date hereof.[10]

In *Borelli,* the Third Circuit stated:

Since it may be difficult to determine whether the district court thought an

---

**8.** *Zimmerman v. Braddock,* 2002 WL 31926608, at *12 n. 76 (Del.Ch., Dec.20, 2002).

**9.** *Borelli v. City of Reading,* 532 F.2d 950, 951 (3d Cir.1976).

**10.** *U.S. States Bank Nat'l Ass'n v. U.S. Timberlands Klamath Falls, L.L.C.,* 2004 WL 1699057, at *5, 2004 Del.Ch. LEXIS 106, at *25–26 (Del.Ch., July 29, 2004), *remanded on other grounds,* 2005 WL 1353766, 2005 Del. LEXIS 215 (Del.Supr.).

amendment was possible and whether the plaintiff is willing or able to amend, we suggest that district judges expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time.[11]

Unfortunately, in this proceeding, the Court of Chancery's order of dismissal without prejudice did not expressly authorize the Plaintiff to seek leave to file another amended complaint by a date certain. An ambiguous record was created by the Court of Chancery's good faith effort to comply with the then new Rule 15(aaa), by following the Third Circuit's practice of implicitly inviting an amendment after a dismissal without prejudice. That ambiguity leads us to conclude that the Dismissal Order in this case must be construed as if it had expressly granted the Plaintiff leave to file another amended complaint. That construction means the Court of Chancery's order dismissing the First Amended Complaint without prejudice was not a final judgment.[12]

Therefore, the Court of Chancery retained jurisdiction to consider the Plaintiff's motion for leave to file the Second Amended Complaint. Under the circumstances in the record, this Court cannot conclude that the Court of Chancery abused its discretion in granting the Plaintiff leave to file the Second Amended Complaint. Before we address the Court of Chancery's decision not to dismiss Count I of the Second Amended Complaint, howev-

er, it is important to provide some guidance for the future about the operation of Rule 15(aaa).

### Finality Construed Prospectively

The purpose of Rule 15(aaa) was to curtail the number of times that the Court of Chancery was required to adjudicate multiple motions to dismiss the same action. Rule 15(aaa) was written to accomplish that objective by requiring plaintiffs, when confronted with a motion to dismiss pursuant to any of Ch. Ct. R. 12(b)(6), (c) or 23.1, to elect to either: stand on the complaint and answer the motion; or, to amend or seek leave to amend the complaint before the response to the motion was due. Rule 15(aaa) makes this election extremely significant by providing that, if a plaintiff chooses to file an answering brief in opposition to a motion to dismiss rather than amend the complaint, any subsequent dismissal pursuant to the motion is with prejudice, unless the court finds for good cause that dismissal with prejudice would not be just under all the circumstances.[13]

■ Contrary to the Third Circuit's holding in *Borelli*, it appears every other federal appellate court has rejected the view that a dismissal "without prejudice" implicitly means "with leave to amend." [14] We are persuaded by the rationale of the majority view. We hold that a final judgment results, for purposes of appeal in Delaware, whenever a complaint is dismissed without prejudice *unless* the plain-

---

11. *Borelli v. City of Reading,* 532 F.2d at 951 n. 1.

12. *Commc'n Workers of Am. v. Am. Tel. & Tel. Co.,* 932 F.2d 199, 204–05 (3d Cir.1991) (holding that the dismissal of a complaint with leave to amend is not considered a final judgment.).

13. *See Stern v. LF Capital Partners, LLC,* 820 A.2d 1143 (Del.Ch.2003).

14. *See, e.g., Mirpuri v. ACT Mfg., Inc.,* 212 F.3d 624 (1st Cir.2000) and *Elfenbein v. Gulf & W. Indus., Inc.,* 590 F.2d 445, 449 (2d Cir.1978).

tiff is expressly granted leave to amend within a time certain.[15]

■ Accordingly, we hold that dismissals with and without prejudice are equally appealable as final judgments.[16] The phrase "without prejudice" in an order of dismissal by a Delaware judge is not to be construed as an implicit invitation to file an amended complaint. Instead, the phrase "without prejudice" will mean only that the otherwise final judgment does not operate as a *res judicata* bar to preclude a subsequent lawsuit on the same cause of action.[17] If leave to amend a complaint is contemplated by a Delaware judge following a dismissal without prejudice, there must be an express statement to that effect in the order, in which case the order will be an interlocutory decree. Our holdings are intended to avoid future confusion and provide certainty regarding the ability to file an amendment, the finality of a judgment of dismissal without prejudice, and the time in which to file an appeal.

### Derivative Suit Demand Requirement

■ In derivative litigation, the demand requirement is a recognition of the fundamental statutory precept that section 141(a) vests boards of directors with the power to manage the business and affairs of corporations.[18] The demand requirement of Rule 23.1 is a "substantive right designed to give a corporation the opportunity to rectify an alleged wrong without litigation, and to control any litigation which does arise." [19] Under Delaware law, a derivative plaintiff must give the board of directors the opportunity to exercise that substantive right or demonstrate that the board is incapable of evaluating demand in a disinterested and independent manner, *i.e.*, because that demand would be futile, it is excused.

Demand futility under Rule 23.1 must be determined pursuant to either the standards articulated in *Aronson v. Lewis*[20] or those set forth in *Rales v. Blasband*.[21] Under the two-part *Aronson* test, demand will be excused if the derivative complaint pleads particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." [22] In *Rales v. Blasband*, this Court identified three circumstances in which the *Aronson* standard will not be applied: "(1) where a business decision was made by the board of a company, but a majority of the directors making the decision has been replaced; (2) where the subject of the derivative suit is not a business decision of the board; and (3) where ... the decision being challenged was made by the board of a different corpora-

---

**15.** *See Acevedo–Villalobos v. Hernandez*, 22 F.3d 384, 389 (1st Cir.1994).

**16.** *Accord Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir.2004); *Allied Air Freight v. Pan Am. World Airways*, 393 F.2d 441, 444 (2d Cir.1968).

**17.** *Elfenbein v. Gulf & W. Indus., Inc.*, 590 F.2d at 449.

**18.** *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984); *see also* Del.Code Ann. tit. 8, § 141(a) ("the business and affairs of every corporation organized under this chapter shall be

managed by or under the direction of a board of directors").

**19.** *Aronson v. Lewis*, 473 A.2d at 809. *See also Brehm v. Eisner*, 746 A.2d 244, 254–55 (Del.2000); *Grimes v. Donald*, 673 A.2d 1207, 1216–17 (Del.1996).

**20.** *Aronson v. Lewis*, 473 A.2d 805 (Del.1984).

**21.** *Rales v. Blasband*, 634 A.2d 927 (Del. 1993).

**22.** *Id.* at 933 (citing *Aronson v. Lewis*, 473 A.2d at 814).

tion."[23] In those situations, demand is excused only where particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.[24]

### Validly in Litigation

In *Harris v. Carter*, the Court of Chancery held that the existence of an independent board of directors is relevant to a Rule 23.1 demand inquiry but "only with respect to derivative claims not already validly in litigation."[25] The Court of Chancery recognized that under section 141(a) the board of directors had a "right and duty to control corporate litigation" and that Rule 23.1 was designed to ensure that through derivative suits "shareholders do not improperly seize corporate powers."[26] The Court of Chancery concluded, however, that Rule 23.1 "ought not to be so construed as to stall the derivative suit mechanism where it has been properly initiated" or to "interrupt litigation."[27] Accordingly, the Court of Chancery stated:

> When claims have been properly laid before the court and are in litigation, neither Rule 23.1 nor the policy it implements requires that a court decline to permit further litigation of those claims upon the replacement of the interested board with a disinterested one . . . . . "[S]ome tribute must be paid to the fact that the lawsuit was properly initiated."

* * *

A rule that recognizes the power to amend or supplement a well-instituted derivative suit without recourse to Rule 23.1, does not acknowledge a shareholder right to institute *new* corporate "claims" against an existing defendant . . . after a disinterested board takes control of the corporation. Rather it limits the representative plaintiff's ability (without independent justification under Rule 23.1) to amend and supplement pleadings to those that relate to "claims" already in litigation. However, "claim" for these purposes does not refer simply to legal theories of liability but refers broadly to the acts and transactions alleged in the original complaint. Thus, an amendment or supplement to a complaint that elaborates upon facts relating to acts or transactions alleged in the original pleading, or asserts new legal theories of recovery based upon the acts or transactions that formed the substance of the original pleading, would not, in my opinion, constitute a matter that would require a derivative plaintiff to bring any part of an amended or supplemental complaint to the board prior to filing.[28]

We agree. As the Court of Chancery recognized in *Harris v. Carter*, there are several legal options that protect the section 141(a) statutory power of a board to manage the corporation's business and affairs.[29] When a derivative action is pending, a board "comprised of new directors who are under no personal conflict with respect to prosecution of a pending derivative claim . . . may cause the corporation to act in a number of ways with respect to

---

23. *Id.* at 934.

24. *Id.*

25. *Harris v. Carter*, 582 A.2d 222, 230 (Del. Ch.1990).

26. *Id.* at 230–31.

27. *Id.* at 231.

28. *Id.*

29. *Id.* at 230–31.

that litigation."[30] For example, the new board can take control of the litigation by becoming realigned as the party plaintiff; move to dismiss the action as not in the corporation's best interest; permit the plaintiff to carry the litigation forward; or appoint a special litigating committee to determine what action to take. Accordingly, we also conclude that:

> when during the pendency of a derivative litigation there occurs a change in the composition of a board that had been disabled by conflict, and the board as newly constituted is capable of validly exercising judgment concerning that corporate claim, it has sufficient avenues open to it to meet its Section 141(a) responsibilities. There are good reasons not to go further and require that a derivative plaintiff interrupt litigation, when amending his pleading or otherwise, to make a demand upon such a newly constituted board.[31]

We hold that, when an amended derivative complaint is filed, the existence of a new independent board of directors is relevant to a Rule 23.1 demand inquiry only as to derivative claims in the amended complaint that are not already validly in litigation.[32] Three circumstances must exist to excuse a plaintiff from making demand under Rule 23.1 when a complaint is amended after a new board of directors is in place: first, the original complaint was well pleaded as a derivative action; second, the original complaint satisfied the legal test for demand excusal; and third, the act or transaction complained of in the amendment is essentially the same as the act or transaction challenged in the original complaint.[33] A fortiori for Rule 23.1 demand purposes, we hold a complaint that has been dismissed is not validly in litigation.

A complaint that is dismissed without prejudice but with express leave to amend is nevertheless a dismissed complaint. It constitutes a judicial determination that the original complaint was either not well pleaded as a derivative action or did not satisfy the legal test for demand excusal. Following such a dismissal, for purposes of a Rule 23.1 demand inquiry, the complaint is not validly in litigation. Consequently, where a complaint is amended with permission following a dismissal without prejudice, even if the act or transaction complained of in the amendment is essentially the same conduct that was challenged in the original dismissed complaint, the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed.

After the Plaintiff's First Amended Complaint was dismissed in its entirety, there were no claims "validly in litigation." Consequently, the Court of Chancery should have assessed demand futility regarding Count I of the Second Amended Complaint with regard to the board that was in place at the time that amendment was filed. Where, as in this proceeding, a plaintiff's complaint has been dismissed and the plaintiff is given leave to file an amended complaint, we hold that the plaintiff must make a demand on the board of directors in place at that time the amended complaint is filed or demonstrate that demand is legally excused as to that board.

---

30. *Id.* at 230.

31. *Id.* at 231.

32. *Accord Harris v. Carter,* 582 A.2d at 230–31.

33. *See Uni–Marts, Inc. v. Stein,* 1996 WL 466961, at *12 (Del.Ch.). *See also Gatz v. Ponsoldt,* 2004 WL 3029868 (Del.Ch.); *In re Fuqua Indus. Inc. S'holder Litig.,* 1997 WL 257460 (Del.Ch.).

## Conclusion

The interlocutory judgment of the Court of Chancery is reversed. This matter is remanded for further proceedings in accordance with this opinion.