In re William P. BRICK, Gilbert M. Cassagne, Theodore J. Host, Christopher S. Kiper, Michael S. McGrath, Michael H. Rauch, Robert N. Verdecchio, Steven J. Janusek, Jimmy C. Weaver, Tracey L. Noll, Nancy Green, Ben D. Key, and Nominal Defendant Reddy Ice Holdings, Inc., Relators.

No. 05–11–01106–CV.

Court of Appeals of Texas, Dallas.

Oct. 10, 2011.

Rehearing Overruled Nov. 7, 2011.

---

Jerry L. Beane, Bradley Wayne Foster, Andrews Kurth, L.L.P., James R. Nelson, Eliot T. Burriss, DLA Piper US LLP, Dallas, for Relators.

Joe Kendall, Jamie J. McKey, Kendall Law Group, LLP, Dallas, William B. Federman, Federman & Sherwood, Oklahoma City, OK, for Real Party in Interest.

Before Justices MOSELEY, FITZGERALD, and FILLMORE.

## OPINION

Opinion by Justice FILLMORE.

Relators filed this mandamus proceeding after the trial court denied their special exceptions to real parties in interest's second amended consolidated shareholder derivative petition (the petition). We conclude the trial court abused its discretion by denying the relators' first special exception and relators have no adequate remedy by appeal. We therefore conditionally grant the writ of mandamus.

## Background and Applicable Law

Relator Reddy Ice Holdings, Inc., a Delaware corporation, is the nation's largest packaged ice manufacturer. The other relators are current or former members of Reddy's board of directors or current or former executives of the company. In March 2008, the Federal Bureau of Investigation executed a search warrant at Reddy's corporate headquarters in connection with a federal antitrust investigation. In October 2008, real parties in interest filed this derivative suit seeking damages on behalf of the corporation for alleged breaches of fiduciary duty by the directors and certain officers of Reddy. The petition alleges that the individual defendants took actions in furtherance of antitrust violations by Reddy, failed to act to prevent such antitrust violations, and/or misled shareholders about illicit actions engaged in by the company.

Under Delaware law,[1] a shareholder may bring a derivative cause of action on behalf of the corporation for breach of fiduciary duty by the corporation's directors or officers if: (1) the shareholder has demanded that the board of directors institute the litigation and the board has wrongfully refused, or (2) making a demand is excused because the

1. The parties agree that because Reddy is a Delaware corporation, Delaware law governs the substantive aspects of this case. *See Connolly v. Gasmire*, 257 S.W.3d 831, 838–39 (Tex.App.-Dallas 2008, no pet.). Texas law, however, governs matters of procedure and remedy. *Id.* at 839.

shareholder has demonstrated, with particularity, that the demand would be futile. *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 366–67 (Del.2006); *see also Connolly v. Gasmire*, 257 S.W.3d 831, 840 (Tex.App.-Dallas 2008, no pet.). The shareholder has the burden to adequately plead demand futility with particularized facts. *Aronson v. Lewis*, 473 A.2d 805, 808 (Del.1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del.2000). The pleading standard for demand futility requires a fact-intensive, director-by-director analysis. *Postorivo v. AG Paintball Holdings, Inc.*, No. 2991–VCP, 3111–VCP, 2008 WL 553205, at *6–7 (Del.Ch. Feb. 29, 2008) (mem. op.); *see also Connolly*, 257 S.W.3d at 840.

▮ To demonstrate demand futility, a shareholder must show the directors are under an influence that sterilized their discretion or they are incapable of making an impartial decision. *See Rales v. Blasband*, 634 A.2d 927, 932 (Del.1993); *Aronson*, 473 A.2d at 814; *Kohls v. Duthie*, 791 A.2d 772, 779 (Del.Ch.2000). However, there is a presumption that, in making a business decision, the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the corporation. In other words, directors are entitled to the presumption that they were faithful to their fiduciary duties. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048 (Del.2004); *Aronson*, 473 A.2d at 812; *see also Connolly*, 257 S.W.3d at 840. Demand futility must be determined as of the time the lawsuit was filed based on the standards articulated in *Aronson* or in *Rales*. *Braddock v. Zimmerman*, 906 A.2d 776, 784 (Del.2006); *Aronson*, 473 A.2d at 810.

▮ To support a claim of demand futility in a case where the board has taken actions that are later challenged by a shareholder, the petition must allege particularized facts creating a reasonable doubt that: "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. To support a claim of demand futility in a case where the shareholder's complaint is that the board failed to act, the petition must allege particularized facts raising a reasonable doubt that "the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934. We apply the *Aronson* test to the allegations that the directors caused or permitted illegal activities, and the *Rales* test to the allegations that the directors failed to prevent illegal activities. *Braddock*, 906 A.2d at 784; *see also Connolly*, 257 S.W.3d at 841.

In the petition, the shareholders alleged that Reddy's board of directors had seven members at the time this suit was filed: William Brick, Gilbert Cassagne, Theodore Host, Christopher Kiper, Michael McGrath, Michael Rauch, and Robert Verdecchio.[2] Cassagne, Kiper, and Rauch were appointed to the board between April and June of 2008, after Reddy had announced it had been served with a search warrant and after Reddy's board formed a special committee to investigate the allegations that the company had engaged in anticompetitive practices. Rauch and Kiper were members of the special committee, and Kiper was a member of the audit committee. Cassagne was named director, chief executive officer, and president of Reddy on June 23, 2008.

---

**2.** These individuals are all relators in this proceeding.

Host was named director on November 15, 2005 and was a member of the special committee and the compensation committee. Verdecchio was named director on September 7, 2005 and was a member of the special committee, the compensation committee, and the audit committee. McGrath was named director on February 22, 2006 and was a member of the special committee and the audit committee. Brick, the final director, was Executive Chairman from June 23, 2008 until May 20, 2009.

Relators filed special exceptions to the petition, including exceptions that (1) real parties in interest did not sufficiently plead demand futility, and (2) Cassagne, Kiper, and Rauch were named to the board after the events at issue and real parties in interest failed to sufficiently allege that any of these directors were aware of or concealed prior misconduct. The trial court denied these two special exceptions, and relators filed this petition for writ of mandamus.[3] In order to obtain mandamus relief, relators must show both that the trial court has abused its discretion and that they have no adequate appellate remedy. *In re Prudential Ins. Co.*, 148 S.W.3d 124, 135–36 (Tex.2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). Relators have met this burden.

## Analysis

Relators' first special exception to the petition was that "Plaintiffs failed to make a pre-suit demand on the board of directors or to allege particularized facts demonstrating that the majority of the board is interested or lacks independence in connection with reviewing a pre-suit demand." In their response to the peti-

tion for writ of mandamus, real parties in interest assert demand on the board would have been futile because (1) the directors' adoption or tacit approval of an illegal business strategy is not a presumptively protected business judgment, and (2) a majority of the directors face a substantial likelihood of liability. Relying on *Conrad v. Blank*, 940 A.2d 28 (Del.Ch.2007), real parties in interest also argue demand on the board would have been futile because, based on the directors' actions and inactions, no reasonable Reddy stockholder would have believed the directors would have properly and independently considered a demand in good faith.

## Business Judgment

█ Real parties in interest first contend demand was futile because the "Defendants, including Brick, Host, Verdecchio, and McGrath" either consciously caused or permitted the company to engage in illegal activities or failed to prevent the company from engaging in those activities and these actions, or inactions, were not a protected business judgment. An affirmative decision to cause a company to violate (or to continue to violate) antitrust law is, of course, a decision that is not protected under the business judgment rule. *See In re Abbott Labs. Derivative S'holders Litig.*, 325 F.3d 795, 809 (7th Cir.2003). However, real parties in interest were required to make particularized allegations in the petition as to action taken by each director that caused Reddy to violate antitrust law or permitted the company to continue any illegal activity. *Connolly*, 257 S.W.3d at 841 ("The pleading standard for demand futility requires a fact-intensive, director-by-director analysis."). In their response to the petition for

**3.** The trial court's rulings on relators' other special exceptions are not at issue in this mandamus proceeding.

writ of mandamus, real parties in interest assert they satisfied this standard based on the allegations in the petition that (1) Brick, Host, Verdecchio and McGrath claimed throughout the relevant · time frame that they adhered to the company's code of conduct and that Reddy had implemented an adequate system of internal controls; (2) the code of conduct expressly prohibited antitrust violations; and (3) Brick, Host, Verdecchio, and McGrath knew that market allocation agreements were "pernicious" antitrust violations, knew they were breaking the law, and appreciated the consequences of their actions. These allegations do not point to any specific action taken by any of the directors in furtherance of the alleged antitrust violations. Not only are these allegations lacking the specificity required to show when and how antitrust laws were violated, real parties in interest have treated these four directors as a group rather than alleging with particularity the manner in which each director individually acted. Therefore, real parties in interest's petition fails the second prong of the *Aronson* test because they have not alleged any act by any individual director that is not protected by the business judgment rule.

*Substantial Likelihood of Liability*

Real parties in interest next argue the trial court did not abuse its discretion by denying relators' first special exception because Brick, Host, Verdecchio, and McGrath were not disinterested and could not properly consider a demand because they face a substantial likelihood of liability. In their response to the petition for writ of mandamus, real parties in interest do not direct us to any allegation in the petition that any individual director was not disinterested or faces a substantial likelihood of liability. Rather, in this section of their response, real parties in interest generally contend the trial court could

have properly inferred that these four directors consciously condoned ongoing, widespread illegal conduct constituting an intentional dereliction of duty and a conscious disregard for the directors' responsibilities. We question whether real parties in interest adequately addressed this issue in their brief. *See* TEX.R.APP. P. 38.1(h), (i), 38.2(a). However, out of an abundance of caution, we have attempted to determine which allegations in the amended petition as well as which arguments in other sections of the response relate to real parties in interest's argument that Brick, Host, Verdecchio, and McGrath face a substantial likelihood of liability and, therefore, are not disinterested.

Real parties in interest alleged in the petition that (1) the special committee could not perform an independent internal investigation because Host, McGrath, and Verdecchio were members of the special committee, but denied wrongdoing in Reddy's 2007 Securities and Exchange Commission Form 10–K; (2) McGrath and Verdecchio were also on the audit committee and, as members of the special committee, were therefore authorized by the board of directors to investigate their own conduct; (3) as members of the audit committee, Host, McGrath, and Verdecchio failed to oversee the quality and integrity of Reddy's financial statements, failed to oversee Reddy's compliance with legal and regulatory requirements and the company's code of conduct, failed to ensure the existence of adequate internal controls, falsely certified that Reddy had adequate internal and financial controls and operated under strict compliance with Reddy's code of conduct, and made false and misleading statements to shareholders, including failing to disclose Reddy engaged in anticompetitive business practices and that these practices caused Reddy to artificially increase its

revenue; and (4) Host and Verdecchio were members of the compensation committee. However, real parties in interest's allegations are directed at the named directors globally. Real parties in interest failed to identify what each director knew, when he knew it, and any action he should have taken because of that knowledge. Because real parties in interest failed to plead particularized facts as to each identified director to show the majority of the board was not independent or disinterested, the petition fails under both the first prong of the *Aronson* test and under the *Rales* test.

### Alternative Test

Citing to *Conrad*, real parties in interest finally claim there is a third test under Delaware law that does not require them to comply with the stringent pleading requirements of *Aronson* and *Rales*. Real parties in interest argue that Delaware courts now excuse demand if a board's conduct "would give a reasonable shareholder reason to doubt that a demand would be properly considered in good faith." The petition as a whole, they assert, meets this standard because: (1) the special committee was composed in a questionable manner, issued only vague and incomplete disclosures about its findings, and was disbanded too early; (2) the majority of the directors denied wrongdoing shortly after the search warrant was executed; and (3) the board placed Ben Key, Executive Vice President of Sales and Marketing, on administrative leave and then permitted him to resign after finding that he had committed violations of company policies. Even assuming that these allegations would cause a reasonable shareholder to doubt that a demand for initiation of litigation would be properly considered by the board, real parties in interest's argument is a misstatement of Delaware law. In *Conrad*, which real parties in interest cite for the proposition that the courts may apply a "reasonable shareholder" test, the Court of Chancery specifically found that the plaintiff's complaint satisfied the *Rales* standard. *Id.* at 40–41. No new standard of pleading was announced in *Conrad*. Further, the Delaware Supreme Court specifically stated in *Braddock* that demand futility must be determined pursuant to either the standards articulated in *Aronson* or in *Rales*. *Braddock*, 906 A.2d at 784. Real parties in interest have not identified any court applying Delaware law that has used the "reasonable shareholder" standard they suggest was created by *Conrad*.

### Conclusion

Without allegations of particularized facts as to each director, the trial court had no discretion to conclude real parties in interest adequately pleaded that a demand on the board of directors for initiation of litigation would have been futile. *See Connolly*, 257 S.W.3d at 848.[4] Additionally, relators have no adequate remedy by appeal for the denial of their first special exception to real parties in interest's allegations of demand futility. *In re Schmitz*, 285 S.W.3d 451, 459 (Tex.2009) (orig. proceeding). Accordingly, we condi-

---

4. Relators also challenge the trial court's denial of relators' special exception number two that asserted real parties in interest failed to allege specific particularized facts as to why demand would have been futile on Cassagne, Kiper, and Rauch, the directors named to the board after the search warrant was executed, or to support real parties in interest's claims against these directors. Because we have concluded in addressing relators' first issue that real parties in interest have failed to plead particularized facts as to *any* director and that the trial court abused its discretion by not requiring real parties in interest to replead their claims, we need not address relators' second issue.

tionally grant the petition for writ of mandamus. A writ will issue only in the event the trial court fails to vacate the portion of its August 1, 2011 order denying relators' special exception number one and to render an order granting that special exception.