# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THOMAS S. HOWLAND, JR., derivatively on behalf of ANIXA BIOSCIENCES, INC. (f/k/a ITUS CORPORATION), | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 2018-0804-KSJM |
| AMIT KUMAR, LEWIS H. TITTERTON, JR., ARNOLD M. BASKIES, JOHN MONAHAN, MICHAEL J. CATELANI, JOHN A. ROOP, ANTHONY CAMPISI, and DALE FOX, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| ANIXA BIOSCIENCES, INC. (f/k/a ITUS CORPORATION), | ) ) ) | |
| Nominal Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: March 22, 2019
Date Decided: June 13, 2019

Sidney S. Liebesman, Johnna M. Darby, Wali W. Rushdan II, FOX ROTHSCHILD LLP, Wilmington, Delaware; *Counsel for Plaintiff Thomas S. Howland, Jr.*

Bradley D. Sorrels, Daniyal M. Iqbal, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, Delaware; *Counsel for Defendants Amit Kumar, Lewis H. Titterton, Jr., Arnold M. Baskies, John Monahan, Michael J. Catelani, John A. Roop, Anthony Campisi, and Dale Fox.*

Stephen E. Jenkins, ASHBY & GEDDES, P.A., Wilmington, DE; *Counsel for Nominal Defendant Anixa Biosciences, Inc. (f/k/a ITUS Corporation).*

**McCORMICK, V.C.**

In this derivative action, a stockholder of Anixa Biosciences, Inc. ("Anixa") challenges the 2017 repricing of stock options held by Anixa's directors and officers. The repricing occurred shortly before those directors and officers publicly announced news of a key patent's issuance to a subsidiary of Anixa. According to the plaintiff, Anixa's directors and officers timed the repricing to precede the public announcement of the issuance so as to effectively "spring-load" the options for the benefit of the directors and officers.

The defendants have moved to dismiss this action under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted and Rule 23.1 for failure to adequately plead demand excusal. Giving the plaintiff all inferences to which he is entitled at the pleadings stage, it is reasonably conceivable that the defendants (with one exception) breached their fiduciary duties and were unjustly enriched by delaying the public announcement of the issuance to permit the repricing of options. The plaintiff has established also that demand is excused because a majority of the Anixa board in office when the complaint was filed was interested by virtue of having received the repriced options. Thus, the defendants' motion to dismiss is largely denied.

1

## I.  FACTUAL BACKGROUND

The facts are drawn from the allegations in the Verified Shareholder Derivative Complaint (the "Complaint"),[1] documents incorporated therein, and judicially noticeable facts.

Anixa is a publicly traded Delaware corporation headquartered in San Jose, California.  Anixa develops biotechnology that uses the power of the immune system to diagnose and fight cancer.  At the time this litigation commenced, Anixa's Board of Directors (the "Board") comprised Chairman, President, and CEO Amit Kumar and four outside directors—Lewis H. Titterton, Jr., Arnold M. Baskies, John Monahan, and David Cavalier.

In mid-2017, Anixa was developing a cancer-testing platform that Kumar had invented called Cchek.  From Cchek, Anixa "expect[ed] to launch a series of non-invasive, inexpensive cancer diagnostic blood tests."[2]  To protect its cancer detection technology, Anixa filed patent applications with the United States Patent and Trademark Office ("USPTO"), including Patent Application No. 15/209,616.[3]  On May 10, 2017, Anixa issued a press release announcing that the USPTO had issued a Notice of Allowance as to the first of Anixa's patent applications.[4]  Anixa's stock

---

[1] C.A. No. 2018-0804-KSJM Docket ("Dkt.") 1.

[2] Compl. Ex. A at 1.

[3] *See id.* at 1; Compl. Ex. B. at 1.

[4] *See* Compl. Ex. A at 1.

price increased by approximately 48% on May 10, closing at $1.70, but steadily declined thereafter. Anixa's stock price closed out the month of May 2017 at $0.84.

On August 3, 2017, Kumar and Anixa's Senior Vice President of Engineering, John A. Roop, received an email from Anixa's outside patent counsel regarding the pending patent application. The email stated that "the patent will issue on August 22, 2017" and be assigned "U.S. Patent Number 9,739,783" (the "'783 Patent").[5] The USPTO in fact issued the '783 Patent on August 22, 2017.

At the time, stock options held by Anixa's directors and officers were underwater. The Board under Kumar's leadership called a special meeting of the Compensation Committee to consider "a proposal to re-price certain issued and outstanding stock options for all of the current officers, directors, and employees of the Company."[6] The special meeting was held on September 6, 2017. Two of three committee members, Titterton and Baskies, were present and constituted a quorum. Kumar and Anixa's Chief Operating Officer and Chief Financial Officer, Michael J. Catelani, also attended the September 6 meeting. At the meeting, the Compensation Committee approved the repricing of 2,029,600 stock options to $0.67, the closing price for Anixa stock that day (the "Repricing"). The original strike prices ranged from $0.82 to $5.30.

---

[5] Compl. Ex. B at 1 (emphasis omitted).

[6] Compl. Ex. D. at 1.

3

Nearly 95% of the repriced options belonged to Anixa directors or officers: Kumar held 880,000; Roop held 385,000; Titterton held 262,400; Catelani held 250,000; Anthony Campisi, Anixa's Vice President of Engineering, held 59,200; Dale Fox, who was on the Board at the time of the Repricing but resigned in September 2017, held 42,000; Baskies held 18,000; and Monahan held 18,000.[7] Of Anixa's five Board members at the time this litigation commenced, all but the newest member, Cavalier, held stock options that were repriced.[8] Anixa publicly disclosed the Repricing on September 8, 2017.

On September 18, 2017, Anixa issued a press release publicly announcing the issuance of the '783 Patent (the "September 18 Press Release"). The September 18 Press Release allegedly affected Anixa's stock trading price and volume significantly. On September 15, 2017, the trading day before the September 18 Press Release, Anixa's stock price closed at $0.69 with a trading volume of 209,959. On September 18, Anixa's stock price closed at $1.28,[9] with a trading volume of 22,764,730, up by approximately 85% and over 10,000%, respectively, from

---

[7] *See* Compl. Ex. D at 4–6 (ITUS Corporation Re-Priced Stock Options 9/6/2017).

[8] Cavalier was not named as a defendant in this action.

[9] Dkt. 23, Transmittal Aff. of Phillip R. Sumpter in Supp. of the Opening Br. in Supp. of Defs.' Mot. to Dismiss the Verified S'holder Deriv. Compl. Ex. 2 at 4 (historical stock price data for "ANIX," as maintained by The Wall Street Journal). This Court "may take notice of the state of the markets" and a company's "share price." *Cty. of York Emps. Ret. Plan v. Merrill Lynch & Co.*, 2008 WL 4824053, at *7 (Del. Ch. Oct. 28, 2008).

September 15. Anixa's stock price "peaked on September 26, 2017, when it closed trading at $4.99."[10]

On October 16, 2017, Fox exercised 42,000 repriced options. On October 19, 2017, Titterton exercised 2,400 repriced options.

The Complaint alleges that this pattern—a repricing preceding an Anixa press release announcing positive news—happened once before in Anixa's history. In 2015, the Board authorized the repricing of stock options the day before Anixa issued a press release announcing that it had experienced an 840% increase in revenue over the previous fiscal year. According to the Complaint, Kumar, Titterton, and Fox all personally benefitted from the 2015 repricing.

With documents obtained pursuant to 8 *Del. C.* § 220, plaintiff Thomas S. Howland, Jr. ("Plaintiff") commenced this litigation on November 5, 2018. The Complaint names as defendants: current directors Kumar, Titterton, Baskies, and Monahan; current officers Roop, Catelani, and Campisi; and former director Fox (together, the "Individual Defendants"). The Complaint names Anixa as nominal defendant (together with the Individual Defendants, "Defendants"). Defendants moved to dismiss the Complaint on November 29, 2018. The parties completed

---

[10] Compl. ¶ 35.

briefing on Defendants' motion on March 12, 2019,[11] and presented oral arguments on March 22, 2019.[12]

## II. LEGAL ANALYSIS

The Complaint asserts two derivative counts against the Individual Defendants: Count I for breach of fiduciary duty and Count II for unjust enrichment. Defendants have moved to dismiss the Complaint pursuant to Court of Chancery Rules 12(b)(6) and 23.1. This decision addresses Defendants' Rule 12(b)(6) motion first, as the questions it raises are "logically prior" to the question of whether demand is excused.[13]

### A. Plaintiff's Claims Survive Under Rule 12(b)(6).

On a motion to dismiss pursuant to Court of Chancery Rule 12(b)(6), the Court accepts "all well-pleaded factual allegations in the Complaint as true, [and] accept[s] even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim[.]"[14] "A trial court is not, however, required to accept

---

[11] *See* Dkt. 23, Opening Br. in Supp. of Defs.' Mot. to Dismiss the Verified S'holder Deriv. Compl. ("Defs.' Opening Br."); Dkt. 27, Answering Br. in Opp'n to Defs.' Mot. to Dismiss the Verified S'holder Compl. ("Pl.'s Ans. Br."); Dkt. 29, Reply Br. in Further Supp. of Defs.' Mot. to Dismiss the Verified S'holder Deriv. Compl. ("Defs.' Reply Br.").

[12] Dkt. 35, Tr. of Oral Argument on Defs.' Mot. to Dismiss and Mot. to Stay Disc.

[13] *Steiner v. Meyerson*, 1995 WL 441999, at *4 (Del. Ch. July 19, 1995).

[14] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

6

as true conclusory allegations 'without specific supporting factual allegations.'"[15] The Court "draw[s] all reasonable inferences in favor of the plaintiff, and den[ies] the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[16]

### 1. Count I—Breach of Fiduciary Duty

Count I asserts that the Individual Defendants breached their fiduciary duties by withholding from the public news of the '783 Patent's issuance, so as to allow the Individual Defendants' stock options to be repriced prior to announcing the patent's issuance. This had the effect, according to the Complaint, of repricing the options at an artificially low exercise price for the Individual Defendants' financial benefit.

To plead a claim for breach of fiduciary duty, the Complaint must allege "(1) that a fiduciary duty exists and (2) that the fiduciary breached that duty."[17] In the compensation context, "[a]n officer or a director can breach fiduciary duties . . . by accepting compensation that is clearly improper or by wrongfully influencing

---

[15] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995)).

[16] *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor*, 812 A.2d at 897).

[17] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at *18 (Del. Ch. June 25, 2018) (internal quotation marks omitted) (quoting *York Linings v. Roach*, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999)), *aff'd sub nom. IDT Corp. v. JDS1, LLC*, 206 A.3d 260 (Del. 2019) (TABLE).

7

compensation decisions."[18] Further, "[t]he essence of a duty of loyalty claim is the assertion that a corporate officer or director has misused power over corporate property or processes in order to benefit himself rather than advance corporate purposes."[19]

Giving Plaintiff the benefit of all inferences to which he is entitled at this stage, it is reasonably conceivable that: On August 3, 2017, Kumar and Roop learned that the USPTO would issue the '783 Patent on August 22, 2017. On August 22, 2017, the USPTO did in fact issue the '783 Patent. This issuance was a significant development for Anixa. Kumar informed the Board then in place that the '783 Patent was issued on August 22 or, at the very least, that the patent was likely to issue on August 22, 2017. The Board did not immediately announce this information to the public. Kumar called a special meeting of the Compensation Committee to reprice director and officer stock options. In calling that meeting, Kumar informed Titterton and Baskies of the reasons for holding the meeting. On September 6, 2017, Titterton and Baskies voted on and approved the Repricing of options.[20] Kumar and Catelani attended this meeting.[21] Each of the Individual

---

[18] *Friedman v. Dolan*, 2015 WL 4040806, at *9 (Del. Ch. June 30, 2015) (citation and internal footnote omitted).

[19] *Steiner*, 1995 WL 441999, at *2.

[20] Compl. ¶ 27.

[21] *Id.*

Defendants held options subject to the Repricing.[22] Approximately 94.4% of the repriced options belonged to the Individual Defendants.[23] On September 8, 2017, Anixa filed a Form 10-Q with the Securities Exchange Commission disclosing the Repricing, but failing to announce news of the '783 Patent's issuance.[24] On September 18, 2017, Anixa issued the September 18 Press Release, publicly announcing the '783 Patent's issuance.[25] The September 18 Press Release caused Anixa's stock price and trading volume to surge.[26]

Based on these facts and inferences, it is reasonably conceivable that each of the Individual Defendants (other than Campisi, as discussed below), breached their fiduciary duty of loyalty by misusing corporate information and processes to benefit themselves rather than Anixa.[27]

---

[22] *See* Compl. Ex. D at 4–6.

[23] *See id.*

[24] Compl. ¶ 33.

[25] *Id.* ¶ 34.

[26] *See id.* ¶ 35.

[27] Defendants' argument that Plaintiff's breach of fiduciary duty claim is "essentially" an insider trading claim does not change this result. *See* Defs.' Opening Br. at 21. Defendants specifically contend that claim fails because the Complaint fails to adequately plead that the Individual Defendants "(1) possessed material, non-public information, *and* (2) used that information improperly by adopting the 2017 Repricing to reap a financial benefit to the detriment of Anixa's stockholders." *Id.* at 21–22. As discussed above, it is reasonable to infer from the facts alleged that all Individual Defendants (aside from Campisi) were aware of the issuance of the '783 Patent and the special meeting to approve the Repricing, and delayed publicly announcing the patent's issuance to permit the Repricing to occur in advance of the announcement in order to further their financial interests. Further, Plaintiff's allegations that Anixa's stock price and trading volume surged following the

9

Moreover, because Titterton and Baskies approved their own compensation under the Repricing, rendering themselves interested in the transaction, the entire fairness standard of review applies.[28]  "The possibility that the entire fairness standard of review may apply tends to preclude the Court from granting [a defendant's] motion to dismiss under Rule 12(b)(6) . . . ."[29]  That is the effect in this case.

Despite Defendants' argument to the contrary, it is reasonable to infer from the Complaint that the Repricing was the product of an unfair process.  The Complaint alleges that the "timing, structure, and disclosure of the 2017 Re-pricing

---

announcement of the '783 Patent's issuance make it reasonably conceivable that news of the patent issuance was material.

[28] *Calma v. Templeton*, 114 A.3d 563, 578 (Del. Ch. 2015) ("[T]he Compensation Committee approved their own compensation and that of the other non-employee directors. Thus, in my view, Plaintiff has rebutted the presumptive business judgment standard of review."); *see also Telxon Corp. v. Meyerson*, 802 A.2d 257, 265 (Del. 2002) ("Like any other interested transaction, directorial self-compensation decisions lie outside the business judgment rule's presumptive protection, so that, where properly challenged, the receipt of self-determined benefits is subject to an affirmative showing that the compensation arrangements are fair to the corporation."); *Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 745 (Del. Ch. 2007) ("Self-interested compensation decisions made without independent protections are subject to the same entire fairness review as any other interested transaction." (citing *Telxon*, 802 A.2d at 265)).

[29] *Klein v. H.I.G. Capital, LLC*, 2018 WL 6719717, at *16 (Del. Ch. Dec. 19, 2018); *see also Stein v. Blankfein*, 2019 WL 2323790, at *7 (Del. Ch. May 31, 2019) ("A finding that entire fairness, with its burden on the defendant, is the applicable standard usually precludes dismissal under Rule 12(b)(6)."); *Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997, at *15 (Del. Ch. July 26, 2018) (a determination that entire fairness review applies "typically precludes dismissal of a complaint under Rule 12(b)(6)" (citing *Orman v. Cullman*, 794 A.2d 5, 21 n.36 (Del. Ch. 2002)).

10

were unfair."[30]   And, as discussed above, Plaintiff has adequately alleged facts sufficient to support an inference that Titterton and Baskies had knowledge that the '783 Patent would issue and repriced stock options in advance of Anixa publicly announcing this information to benefit from any resulting stock surge.   At the pleadings stage, it is likewise reasonable to infer that the process affected the price.[31]

For these reasons, Defendants' motion to dismiss Count I as to Kumar, Titterton, Baskies, Monahan, Catelani, Roop, and Fox under Court of Chancery Rule 12(b)(6) is denied.[32]

---

[30] Compl. ¶ 71.

[31] *See Stein*, 2019 WL 2323790, at *8 (Plaintiff bears a "low pleading burden regarding director compensation: to point to 'some facts' implying lack of entire fairness, which will require a unified review of both process and price." (citation omitted)); *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 467 (Del. Ch. 2011) ("process can infect price" (citation omitted)).

[32] Defendants also sought to dismiss Count I "[t]o the extent [it] purports to plead a disclosure claim[.]"   Defs.' Opening Br. at 39 (citing Compl. ¶¶ 37, 69).   While the Complaint alleges that "Defendants breached their fiduciary duties by failing to disclose adequate financial and material information respecting the Company[,]" Compl. ¶ 69, Plaintiff's answering brief makes no mention of this allegation.  With respect to disclosure, Plaintiff's answering brief is limited to argument regarding the materiality of the '783 Patent's issuance, and this argument is expressly made in support of Plaintiff's "showstopper" claim that the Individual Defendants breached their fiduciary duties by withholding from the public news of the '783 Patent's issuance, so as to allow the Repricing to occur in advance of such announcement and work a benefit on the Individual Defendants.  *See* Pl.'s Ans. Br. at 28 ("It is the confluence of the facts alleged in the Complaint that the Defendants strategically withheld material information that would significantly increase the value of the stock until after the re-pricing that make this action a breach of fiduciary duty.  This theory has been properly pled and, therefore, survives Defendants' motion to dismiss.").  Accordingly, Plaintiff has waived any disclosure claim distinct from his primary breach of fiduciary duty claim.  *Forsythe v. ESC Fund Mgmt. Co.*

11

Campisi is a different story. The Complaint's individualized allegations regarding Campisi are limited to a single paragraph, alleging that Campisi is the Vice President of Engineering of Anixa, a member of Anixa's management team, and that he personally benefitted from the Repricing.[33] Documents incorporated by reference further demonstrate that Campisi owns 59,200 repriced options.[34] Rather than plead the role Campisi played in the events at issue, the Complaint lumps Campisi in with the other Individual Defendants. The Complaint provides no basis from which to infer knowledge of the patent issuance prior to the Repricing, involvement in the decision to withhold news of the patent issuance, or involvement in the Repricing by Campisi.[35] Because there are no well-pled facts sufficient to suggest any wrongdoing by Campisi, Plaintiff's breach of fiduciary duty claim as pled against Campisi is dismissed.

### 2. Count II—Unjust Enrichment

Count II asserts that the Individual Defendants were unjustly enriched by the 2017 Repricing. To plead a claim for unjust enrichment, the Complaint must allege

---

*(U.S.), Inc.*, 2007 WL 2982247, at *11 (Del. Ch. Oct. 9, 2007) ("The plaintiffs have waived these claims by failing to brief them in their opposition to the motion to dismiss.").

[33] Compl. ¶ 12.

[34] Compl. Ex. D. at 4.

[35] *See Shandler v. DLJ Merch. Banking, Inc.*, 2010 WL 2929654, at *12 (Del. Ch. July 26, 2010) (dismissing claim against director where "[t]he complaint [was] largely silent as to the role of [the director] in any of the events and simply lump[ed] him in with the other directors").

12

"(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[36] Defendants argue that Plaintiff has not alleged facts sufficient to support the first four elements.[37] The Court disagrees. At the pleadings stage, this Court is required to accept Plaintiff's well-pled allegations as true and draw all reasonable inferences in Plaintiff's favor. Plaintiff's allegations, taken together, adequately plead the first four elements.

The Complaint alleges facts sufficient to support an inference that the Repricing enriched the Individual Defendants. Specifically, on any given date after the Repricing, each Individual Defendant was enriched by each repriced option he held by at least the difference between (i) the lower of Anixa's trading price and the option's original strike price, and (ii) the $0.67 strike price set by the Repricing.[38] Plaintiff's allegations similarly support an inference of an impoverishment. Indeed, Defendants point out that Anixa suffered a $261,000 non-cash charge as a result of the Repricing.[39] There is direct relationship between the alleged enrichment and

---

[36] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[37] Defs.' Opening Br. at 42–43; Defs.' Reply Br. at 32.

[38] *See* Compl. ¶ 29.

[39] Defendants argue that this charge was "negligible" and therefore should not qualify as an impoverishment. Defs.' Opening Br. at 42 & n.18, 44 n.19. But a plaintiff is not required to plead a non-negligible impoverishment to withstand a dismissal motion. *See Nemec*, 991 A.2d at 1130 (providing the elements of an unjust enrichment claim). Defendants further argue that the Repricing served "legitimate business reasons" and

13

impoverishment, as the Complaint alleges that the purpose of the Repricing was to provide a financial benefit to the Individual Defendants at the expense of Anixa and its non-employee stockholders.[40] It is also reasonably conceivable that the Individual Defendants acted without justification; as discussed above, Plaintiff will have the opportunity to litigate his claim for breach of fiduciary duty.

Accordingly, Defendants' motion to dismiss Count II under Rule 12(b)(6) is denied.

## B. Plaintiff Has Adequately Pled Demand Excusal Under Rule 23.1.

"A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."[41] "[W]here a plaintiff seeks to file a derivative suit—which '[b]y its very nature . . . impinges on the managerial freedom of directors'—the plaintiff must cross a threshold framed by Rule 23.1."[42] "To meet the requirements, the plaintiff must demand that the board pursue the claim or, alternatively, must demonstrate that demand on the board would be futile such that the demand should be excused."[43]

---

actually benefited Anixa. Defs.' Opening Br. at 43. Defendants will have an opportunity to prove that theory in the next stage of this litigation.

[40] *See* Compl. ¶ 32.

[41] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 *Del. C.* § 141(a)), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[42] *In re Fitbit, Inc. S'holder Deriv. Litig.*, 2018 WL 6587159, at *10 (Del. Ch. Dec. 14, 2018) (quoting *Aronson*, 473 A.2d at 811).

[43] *Id.* (citing *Beam v. Stewart*, 845 A.2d 1040, 1048 (Del. 2004)).

14

Here, Plaintiff made no pre-suit demand upon the Board, but Plaintiff asserts that pre-suit demand was excused as a matter of law.

Delaware courts apply one of two tests in evaluating whether demand is excused. As the Delaware Supreme Court has instructed:

> Demand futility under Rule 23.1 must be determined pursuant to either the standards articulated in *Aronson v. Lewis*[, 473 A.2d 805 (Del. 1984),] or those set forth in *Rales v. Blasband*[, 634 A.2d 927 (Del. 1993)]. Under the two-part *Aronson* test, demand will be excused if the derivative complaint pleads particularized facts creating a reasonable doubt that "(1) the directors are disinterested and independent or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." In *Rales v. Blasband*, this Court identified three circumstances in which the *Aronson* standard will not be applied: "(1) where a business decision was made by the board of a company, but a majority of the directors making the decision has been replaced; (2) where the subject of the derivative suit is not a business decision of the board; and (3) where . . . the decision being challenged was made by the board of a different corporation." In those situations, demand is excused only where particularized factual allegations create a reasonable doubt that, as of the time the complaint was filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.[44]

---

[44] *Braddock v. Zimmerman*, 906 A.2d 776, 784–85 (Del. 2006) (internal footnotes omitted).

In this case, *Rales* applies because the challenged decision was made by a "committee consisting of less than half of the directors in office when the lawsuit was initiated."[45]

For demand to be excused under *Rales*, the Complaint must allege particularized facts that create "a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."[46] The Board relevant to this analysis—the Board in place at the time Plaintiff filed the Complaint—comprised Kumar, Titterton, Baskies, Monahan, and Cavalier (the "Demand Board").

Plaintiff does not challenge the independence of any of the five members of the Demand Board. He contends, however, that four of the five members—Kumar, Titterton, Baskies, and Monahan—were interested because they held stock options affected by the Repricing.[47]

Defendants concede that these four directors benefited from the Repricing.[48] They argue, however, that absent self-dealing, directors are not considered

---

[45] *Calma*, 114 A.3d at 575. Both Plaintiff and Defendants applied the *Rales* test in their briefing. Defs.' Opening Br. at 45; Pl.'s Ans. Br. at 16.

[46] *Rales*, 634 A.2d at 934.

[47] The parties appear to agree that Cavalier is disinterested and independent for demand futility purposes. *See* Defs.' Opening Br. at 45; Compl. ¶ 9.

[48] Defs.' Opening Br. at 47.

"interested" under *Rales* "solely" because they received compensation from the company.[49] They further argue that to deem a director who did not participate in the challenged decision "interested," the director's compensation must be material to him or her. Relying on these general rules, Defendants contend that three of the five members of the Demand Board—Kumar, Monahan, and Cavalier—did not participate in the challenged decision; thus the Complaint must, but does not, plead that the Repricing generated material benefits for these three directors.[50]

Defendants' argument fails because Plaintiff has alleged facts from which it is reasonable to infer that the Repricing generated material benefits for Kumar and Monahan. The Complaint alleges that Kumar and Monahan respectively held 880,000 and 18,000 stock options that were subject to the Repricing.[51] Calculating for each of these options the difference between the option's original strike price and the post-Repricing $0.67 strike price, the resulting benefit provided to Kumar and

---

[49] *Id.*; *see also Calma*, 114 A.3d at 576 (Del. Ch. 2015) ("Under Delaware law, directors are generally not considered interested under *Aronson* or *Rales* 'simply because [they] receive compensation from the company.'" (quoting *Weiss v. Swanson*, 948 A.2d 433, 448 (Del. Ch. 2008))).

[50] Defs.' Opening Br. at 49–51. Because Titterton and Baskies stood on both sides of the Repricing, they are deemed "interested" without regard to whether they benefited materially from the Repricing. *Cambridge Ret. Sys. v. Bosnjak*, 2014 WL 2930869, at *5–6 (Del. Ch. June 26, 2014) (discussing the lack of a materiality standard for self-dealing transactions).

[51] Compl. ¶ 29; Compl. Ex. D at 4–6. Defendants also concede that "stock option grants[] formed a critical component of the Company's employee compensation." Defs.' Opening Br. at 10.

17

Monahan by the Repricing could be approximately $1.7 million and $70,000, respectively.[52] It is reasonably conceivable that these amounts were material to Kumar and Monahan.[53]

Accordingly, because Plaintiff has alleged with particularity that four of the five members of the Demand Board—Titterton, Baskies, Kumar, and Monahan—were interested in the Repricing, demand is excused.[54]

---

[52] *See* Compl. Ex. D at 4–6; Compl. ¶ 29.

[53] Moreover, the Complaint alleges that Kumar had knowledge of the '783 Patent's issuance, called the September 6, 2017 Compensation Committee meeting, and attended the meeting. *See, e.g.*, Compl. ¶¶ 24–27. Given the depth of Kumar's alleged involvement in the alleged wrongdoing, the Complaint adequately pleads facts demonstrating that Kumar faces a substantial likelihood of liability for breaching his fiduciary duties, thereby entitling Plaintiff to a reasonable inference of interestedness as to Kumar on that independent basis. *See Rales*, 634 A.2d at 936.

[54] It bears noting that at least one line of Delaware cases suggests that, in the context of a challenge to director compensation, Plaintiff need not plead materiality as to the directors who did not participate in the self-dealing transaction to demonstrate "interest." *See Calma v. Templeton*, 114 A.3d 563, 576 (Del. Ch. 2015) (rejecting argument that a plaintiff must plead that challenged equity awards were material to a director who received those awards to render that director interested under *Rales*); *Conrad v. Blank*, 940 A.2d 29, 38 (Del. Ch. 2007) (finding directors who received the challenged backdated options "clearly not disinterested under *Rales*" although they did not participate in the challenged decision). *But see California Public Emps.' Ret. Sys. v. Coulter*, 2002 WL 31888343, at *8–9 & nn.15 & 20 (Del. Ch. Dec. 18, 2002) (holding that alleged ownership of repriced options by directors who did not participate in challenged repricings was insufficient to render those directors interested).

## III.   CONCLUSION

For all these reasons, Defendants' motion to dismiss Count I as to Individual Defendant Campisi is GRANTED, and Defendants' motion to dismiss is otherwise DENIED.

**IT IS SO ORDERED.**