# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

LEON O. MESSINA and  )
ANN M. MESSINA,  )
      )
      Plaintiffs,  )
      )
      v.  )  C.A. No. 2022-0421-SEM
      )
CARLA ANN VANDERWENDE  )
KILLMON and GARY H. KILLMON,  )
      )
      Defendants.  )

## FINAL REPORT

Final Report: August 25, 2023
Date Submitted: May 1, 2023

Gary W. Alderson, SCHWARTZ & SCHWARTZ, ATTORNEYS AT LAW, P.A., Dover, Delaware; *Counsel for Plaintiffs*.


Kashif I. Chowdhry and F. Michael Parkowski, PARKOWSKI, GUERKE & SWAYZE, P.A., Dover, Delaware; *Counsel for Defendants*.

**MOLINA, M.**

In this contract action, the plaintiffs seek specific performance of neighborly agreements regarding shared use of a driveway. The plaintiffs allege the parties entered into various oral and written agreements and seek enforcement thereof, or relief through alternative theories. The defendants argue this action is a nonstarter and, as such, moved to dismiss it in full. After the motion to dismiss was argued, the plaintiffs moved for leave to amend their complaint. I find that request comes too late and recommend that the plaintiffs' claims for breach of the alleged oral agreements, breach of the implied covenant, and promissory estoppel be dismissed with prejudice. That leaves the plaintiffs' claims for breach of the written agreement, fraudulent inducement, equitable fraud, and negligent misrepresentation, which I find should survive the pleadings and proceed to discovery.

## I. BACKGROUND[1]

The properties at issue were purchased at a 2007 auction from Donald L. Bullock. Thereat, Leon Messina and Ann Messina (together, the "Plaintiffs") purchased two parcels of Mr. Bullock's land located at 5517 Whiteleysburg Road in Harrington, Delaware.[2] The first parcel consists of 44.63 wooded acres, where the

---

[1] Unless otherwise noted, the facts recited herein are taken from the complaint. Docket Item ("D.I.") 1. Citations in the form "Ex. __" refer to exhibits to the complaint. D.I. 4–17. I do not consider the proposed amendments to the complaint because, as explained below, I recommend the motion to amend be denied.

[2] D.I. 1 ¶ 8.

Plaintiffs' home is located ("Parcel 1").[3] The second parcel is a thirteen-by-six-hundred-foot-wide driveway connecting Parcel 1 to Whiteleysburg Road ("Parcel 2," with Parcel 1, the "Messina Property").[4]

At the same 2007 auction, Mr. Bullock sold a neighboring 111.61-acre farm (the "Vanderwende Farm") to the Revocable Trust of William W. Vanderwende and the Revocable Trust of Ellen Ann Vanderwende.[5] The Vanderwende Farm consists of 90 acres of cleared land, tilled by the owners of the Vanderwende Farm during all relevant periods.[6] The remaining acreage is wooded and has been historically used by the owners for hunting.[7] On June 19, 2021, after a few interim transfers, the Vanderwende Farm was conveyed to the defendants here: Carla Ann Vanderwende Killmon and Garry Killmon (collectively, the "Defendants," with the Plaintiffs, the "Parties").[8]

The Vanderwende Farm and the Messina Property share a common driveway. Starting from Whiteleysburg Road, the first portion is the 13-foot-wide driveway on

---

[3] *Id.* ¶¶ 7–9.

[4] *Id.* Although termed as connecting, the Plaintiffs plead that, through a mistake, "the two parcels do not actually connect; rather, the corner of one actually abuts the corner of the other." *Id.* ¶ 10.

[5] Ex. 4.

[6] D.I. 1 ¶ 14.

[7] *Id.* ¶ 15.

[8] *Id.* ¶ 4.

Parcel 2, owned by the Plaintiffs.[9] The Plaintiffs "have always allowed and continue to allow" the owners of the Vanderwende Farm to use the driveway on Parcel 2. [10] Then, where Parcel 2 abuts, but fails to fully adjoin Parcel 1, the driveway "continues across a small portion of the Vanderwende [Farm] to connect the two Messina parcels where they abut one another."[11] Thereafter, the driveway "widens considerably and continues past the [Plaintiffs'] home."[12] As it widens, the driveway straddles the Plaintiffs' property on Parcel 1 and the Vanderwende Farm, "and each party uses their side of this wider driveway portion to access their respective properties."[13]

## A. The Oral Agreement

Although this neighborly agreement worked well, it has not been without incident. Per the Plaintiffs, the turn from Whiteleysburg Road onto the 13-foot-wide driveway in Parcel 2 is too tight for the heavy farming equipment and trucks used to serve the Vanderwende Farm.[14] As is the driveway's narrow width as it continues

---

[9] *See* Ex. 2–3; D.I. 1 ¶ 26.

[10] D.I. 1 ¶ 24.

[11] *Id.* ¶ 20.

[12] *Id.* ¶ 21.

[13] *Id.* ¶ 22.

[14] *Id.* ¶ 27.

toward Parcel 1.[15]  Without sufficient space to maneuver, equipment has run off the driveway, sometimes getting stuck.[16]  The Plaintiffs must then repair and maintain the property to account for any damage or strain from the agricultural use.[17]

Prompted by these concerns, Mr. Messina walked over to the Vanderwende Farm in the Spring of 2018 to talk with Mr. Vanderwende about a solution.[18]  At that time, the Vanderwende Farm was owned by the Revocable Trust of William W. Vanderwende and Ellen Ann Vanderwende (the "Vanderwende Trust"), and Mr. Vanderwende served as a co-trustee.[19]  Mr. Messina and Mr. Vanderwende discussed the driveway and how to improve access for the Plaintiffs and the Vanderwende Farm, but failed to reach any resolution.[20]

They restarted their discussion on September 15, 2018 (the "September Meeting").[21] At the September Meeting, Mr. Vanderwende proposed to "give a strip of land to the [Plaintiffs] to widen the driveway and connect their land-locked parcel, so long as they would agree to construct and maintain the widened driveway as they

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* ¶ 28.

[19] Ex. 4.

[20] D.I. 1 ¶ 29.

[21] *Id.* ¶ 30. One of Mr. Vanderwende's sons ("believed to be Jimmy") was present. *Id.*

always had with the existing driveway."[22] Mr. Messina countered that the land should be sold rather than gifted.[23] Mr. Vanderwende agreed (the "Oral Agreement").[24]

## B. The Written Agreement

Following the September Meeting, the Plaintiffs began working toward memorializing and effectuating the Oral Agreement. They arranged for surveys to support an application for a minor lot line adjustment, had a phone pedestal moved, and hired separate counsel to draft a sales agreement and conduct closing.[25]

But the process moved slowly. Eventually, in the Spring of 2019, Mr. Messina contacted Ms. Killmon to arrange a visit so that Mr. Vanderwende could sign forms related to the sale.[26] Mr. Messina met with Mr. Vanderwende on April 1, 2019, who signed "the forms" and Mr. Messina delivered the signed documents to his attorney's office on April 2, 2019.[27]

Although it is unclear what "the forms" included, it is apparent they did not include an agreement of sale. Rather, it was not until January 23, 2020, when Mr.

---

[22] *Id.* ¶ 33.

[23] *Id.* ¶ 34.

[24] *Id.* ¶ 35.

[25] *Id.* ¶ 39(a)–(c); Ex. 7.

[26] D.I. 1 ¶ 42.

[27] *Id.* ¶¶ 43–44.

Messina presented Mr. Vanderwende with, and Mr. Vanderwende signed, an agreement of sale (the "Written Agreement").[28]

The Written Agreement contemplated that Mr. Vanderwende, as trustee of the Vanderwende Trust, would sell the Plaintiffs ".28 acres of the land being a part of the property known as Whiteleysburg Road, Harrington, DE 19952, being tax parcel number: MN-00-169.00-1-11.00-000" (the "Strip").[29] Under "Purchase Price" the Written Agreement's typed print contemplated a price of "eight hundred dollars ($800.00)," but those words were crossed out and "$2,000.00" was handwritten above.[30] Despite what looks like a last-minute change, the Plaintiffs aver the $2,000.00 price was previously discussed and agreed to by all involved.[31] The Written Agreement also contemplated a deposit, with the typed print reflecting $100.00, but that amount was crossed out with "$1,200.00" handwritten above it.[32] The Plaintiffs paid the $1,200.00 deposit on the day they signed the Written Agreement.[33]

---

[28] *Id.* ¶ 49; Ex. 11.   Ms. Killmon was present at the signing. D.I. 1 ¶ 50.

[29] D.I. 1 ¶ 49.

[30] Ex. 8 ¶ 2.

[31] D.I. 1 ¶ 52.

[32] Ex. 8 ¶ 2.

[33] D.I. 1 ¶ 54. "The Vanderwendes cashed and deposited the $1,200.00 Messina check on March 23, 2020." *Id.* ¶ 57.

Settlement was originally set on February 7, 2020.[34] The Written Agreement did, however, allow for extensions "for a reasonable time" if necessary "to secure a survey, or to prepare the necessary legal and financial settlement documents[.]"[35] The Written Agreement also contained a "No Representation; Entire Agreement" provision, explaining that:

> Purchaser and Seller agree that they have read and fully understand this Agreement, that it and all necessary attachments contains the entire agreement between them, and that they do not rely on any oral representation or statement not expressly written in this Agreement. Furthermore, this Agreement shall not be amended except in writing signed by Purchaser and Seller.[36]

Finally, under "Miscellaneous," the Written Agreement provided:

> The parties hereto agree to execute and deliver any other instrument(s) or document(s) that may be necessary or convenient to carry into effect the provisions of this Agreement, and the parties agree to otherwise cooperate in good faith as may be necessary to complete the settlement contemplated therein.[37]

Following the execution of the Written Agreement, the Plaintiffs began to prepare for closing. For unknown reasons, settlement was moved to August 6, 2020.[38] At some point before closing, Mr. Messina called Ms. Killmon to arrange to

---

[34] Ex. 8 ¶ 4.

[35] *Id.*

[36] *Id.* ¶ 18.

[37] *Id.* ¶ 22.

[38] D.I. 1 ¶ 58.

have Mr. Vanderwende sign and have notarized a "final set of settlement documents."[39] Included in the final documents was a license agreement through which the Plaintiffs proposed to grant the Defendants a license to use the driveway and required the Plaintiffs to maintain it (the "License Proposal").[40] Upon receiving the License Proposal, Ms. Killmon told Mr. Messina that she did not like the language and would have the License Proposal reviewed by a friend.[41]

## C.    The Deal Falls Through

On August 5, 2020, Ms. Killmon notified the closing attorney that Mr. Vanderwende had lacked capacity "for some time" and therefore could not sign the closing paperwork.[42] Then, on August 21, 2020, a successor trustee to the Vanderwende Trust communicated to counsel to the Plaintiffs that Mr. Vanderwende lacked capacity to execute the Written Agreement or any other associated documents, and that the Vanderwende Trust was unwilling to move forward with the transaction as proposed.[43]  Counsel for the Defendants returned the

---

[39] *Id.* ¶ 59. Ms. Killmon said she would "take care of the arrangements for [Mr. Vanderwende] to sign." *Id.* ¶ 60.

[40] Ex. 10.

[41] D.I. 1 ¶¶ 62–63.

[42] *Id.* ¶ 64.

[43] *Id.* ¶ 65.

deposit to the Plaintiffs, who have not cashed it "fearing that would signify their acquiescence to cancellation of the sale."[44]

Shortly thereafter, on September 27, 2020, Mr. Vanderwende died.[45] With his passing, Ms. Killmon became a co-trustee of the Vanderwende Trust.[46]

## D. The Post-Death Agreement

After Mr. Vanderwende's passing, and despite the earlier complications, the Parties continued to negotiate a sale of the Strip.[47] On April 2, 2021, counsel for the Plaintiffs affirmed that they wanted to move forward, and "simply wanted the [Defendants] to sell the 0.28-acre parcel to them for the agreed upon price of $2,000."[48] The Plaintiffs also confirmed that they were interested in moving forward with the Oral Agreement.[49]

On April 13, 2021, the Defendants' counsel confirmed that the Defendants "agreed to sell the subject parcel to the [Plaintiffs] for $2,000 … [o]n the terms

---

[44] *Id.* ¶ 66.

[45] *Id.* ¶ 68.

[46] *Id.* ¶ 68; D.I. 14; Ex. 11 at Art. VI. The other co-trustee is Douglas Edward Vanderwende. Ex. 11 at Art. VI.

[47] D.I. 1 ¶ 69.

[48] *Id.* ¶ 70. The Complaint reflects this date as 2020, but the Plaintiffs confirmed in briefing that "[t]he dates given in ¶¶ 70–72 of the Complaint should all be 2021 not 2020." D.I. 27, p.15 (emphasis in original).

[49] D.I. 1 ¶ 70(d)–(e).

described" (the "Post-Death Agreement").[50] Thus, on April 26, 2021, counsel for the Defendants sent a draft deed, easement agreement, and a minor lot line adjustment plan to the Plaintiffs' counsel.[51] But, concerned that the drafts did not cover all the agreed upon terms, the Plaintiffs rejected them.[52]

As the Parties continued to negotiate acceptable terms, the Vanderwende Farm changed owners. On June 19, 2021, the Vanderwende Trust and Ms. Killmon, as designated beneficiary of the Vanderwende Farm under the Vanderwende Trust, transferred the Vanderwende Farm to the Defendants.[53]

Ultimately, and unfortunately, the Parties were unable to reach a final agreement and this action was filed.[54]

### E.    Procedural Posture

The Plaintiffs filed their complaint on May 12, 2022 (the "Complaint").[55] In the Complaint, the Plaintiffs plead four claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, and

---

[50] *Id.* ¶ 71(a)–(b).

[51] *Id.* ¶ 72; Ex. 12.

[52] D.I. 1 ¶¶ 73–75.

[53] Ex. 4.

[54] D.I. 1 ¶¶ 73–79.

[55] D.I. 1.  The Plaintiffs attached to their opposition to the Motion to Dismiss (as defined herein) an earlier complaint filed in March 2021 against the Vanderwende Trust.  *See* D.I. 27, Ex. A.  Per the Plaintiffs, the complaint was rejected for filing and not refiled because the Parties continued to negotiate.  D.I. 28.

(4) fraudulent inducement, equitable fraud, and negligent misrepresentation. The Plaintiffs' primary relief requested is specific performance.

On September 9, 2022, the Defendants filed a motion to dismiss the Complaint under Court of Chancery Rule 12(b)(6) and 12(b)(7) (the "Motion to Dismiss").[56] I heard oral argument on the Motion to Dismiss on January 19, 2023.[57] During oral argument, the Plaintiffs indicated an interest in seeking to amend the Complaint.[58] The Plaintiffs followed through on March 3, 2023, when they filed a motion to amend the Complaint (the "Motion to Amend").[59] The Defendants filed their opposition to the Motion to Amend on April 17, 2023, and on May 1, 2023, the Plaintiffs advised they would not be filing a reply brief in further support of the Motion to Amend.[60] At that time, I took both the Motion to Dismiss and the Motion to Amend under advisement. This is my final report on both.

## II.    ANALYSIS

The Defendants seek dismissal of the Complaint under both Court of Chancery Rule 12(b)(6) and 12(b)(7) and leave to amend the Complaint. I first address the Motion to Dismiss and then turn to the Motion to Amend.

---

[56] D.I. 23.

[57] D.I. 35.

[58] D.I. 36; D.I. 46 at 50:11–22.

[59] D.I. 38.

[60] D.I. 44 at 4, 11; D.I. 45.

**A.    Counts II and III should be dismissed; Count I and IV should survive in part.**

Under Rule 12(b)(6), the Defendants argue the Complaint fails to state a viable claim for which relief may be granted. I agree, in part. I find the Plaintiffs pled a viable claim for breach of the Written Agreement, but not the Oral Agreement or the Post-Death Agreement. I further find the Plaintiffs failed to plead reasonably conceivable claims for breach of the implied covenant, specific performance, or promissory estoppel. But I find the other alternative theories viable. Thus, I recommend the Complaint be dismissed in part, with only Count I and IV surviving.

The standard of review under Rule 12(b)(6) is settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[61]

I apply this standard to the following: (1) Counts I and II for breach of contract, specific performance, and breach of the implied covenant, and (2) Count III and IV for promissory estoppel, fraudulent inducement, equitable fraud, and negligent misrepresentation.

---

[61] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citations and quotations omitted).

1. **The breach-of-contract claims should survive, in part, with specific performance off the table.**

The Plaintiffs allege breach of contract and the implied covenant and seek an award of specific performance. For their requested remedy, the Plaintiffs must establish "(1) a valid contract exists, (2) [they] [are] ready, willing, and able to perform, and (3) that the balance of equities tips in favor of the" Plaintiffs.[62] At the pleading stage, the question is "whether it is reasonably conceivable that [the Plaintiffs] can establish a right to specific performance . . . by clear and convincing evidence."[63]

Here, the Defendants contest whether the Plaintiffs have pled that any valid contract exists and argue that the balance of the equities would not support specific performance. I address these arguments in turn.

a. **The Plaintiffs well-pled the existence and breach of one contract: the Written Agreement.**

I find the Plaintiffs have pled sufficient support for a pleading stage finding that the Written Agreement is an enforceable contract and was breached. "This Court has found that the price, date of settlement, and the property to be sold are essential

---

[62] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).

[63] *Hastings Funeral Home, Inc. v. Hastings*, 2021 WL 8741648, at *3 (Del. Ch. Nov. 29, 2021), adopted, (Del. Ch. 2021).

terms of an enforceable contract for the sale of real property."[64] These terms are all present in the Written Agreement, a claim for breach of which should survive the pleadings.[65]

But the Plaintiffs did not, within Count I, plead any breach-of-contract claims arising from the Oral Agreement or the Post-Death Agreement. First, the Plaintiffs aver that the Oral Agreement was memorialized through the Written Agreement which was fully integrated. Second, the Plaintiffs failed to include either the Oral Agreement or the Post-Death Agreement in their breach count, nor seek any relief related thereto in their prayer for relief. The Plaintiffs pled: "the issue here is specific performance of the sale, so once that is resolved, the [P]arties can memorialize the

---

[64] *Id.* (internal quotation omitted).

[65] The Defendants argue that the Written Agreement fails to reflect mutual assent and lacks all material terms. At this stage I disagree. At the pleading stage, the signatures on the Written Agreement support a reasonably conceivable finding of mutual assent. *Cf. Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1231 (Del. 2018) (holding that the signatures of both parties provided strong evidence that they intended to be bound by the agreement). Regarding material terms, the Defendants have articulated that the Written Agreement lacks licensing terms and includes an ambiguous property location. I find the first irrelevant, because the Written Agreement is fully integrated. The second I find does not support dismissal of the claim at this stage. *See Heckman v. Nero*, 1999 WL 182570, at *4 (Del. Ch. Mar. 26, 1999) ("Even if aspects of the agreement are obscure, the agreement will be enforceable if the Court is able to ascertain the terms and conditions on which the parties intend to bind themselves.").

status quo ante of the use and maintenance of the driveway on the conveyed land to the terms that were already agreed upon."[66]

It was only through their briefing and the Motion to Amend that the Plaintiffs attempted to add the Oral Agreement and Post-Death Agreement to their breach claim. But parties cannot supplement the claims pled in their complaint through briefing.[67] And, for the reasons I explain below, I recommend the Motion to Amend be denied. Thus, I look to the Complaint, and I find the Plaintiffs failed to plead a claim for breach of the Oral Agreement or Post-Death Agreement. To the extent the Plaintiffs intended to include the Oral Agreement or the Post-Death Agreement within their breach claims (Counts I and II), they should be dismissed.

Further, the Plaintiffs failed to plead a reasonably conceivable claim for breach of the implied convent of good faith and fair dealing. The Plaintiffs appear to argue that, because the implied covenant is inherent in every agreement, they need not plead a separate factual predicate for breach thereof. I disagree.

"The implied covenant is inherent in all contracts and is used to infer contract terms 'to handle developments or contractual gaps that the asserting party pleads

---

[66] D.I. 1 ¶ 103. The Plaintiffs affirm as much in their prayer for relief, where they aver the Defendants are in breach of the Written Agreement; there is no mention of the Oral Agreement or the Post-Death Agreement. *Id.* ¶¶ 80–103.

[67] *See Tygon Peak Cap. Mgmt., LLC v. Mobile Investco, LLC*, 2023 WL 4857281, at *5 (Del. Ch. July 31, 2023) ("Arguments do not serve to amend the pleadings.") (citations omitted).

neither party anticipated.'"[68] At the pleading stage, thus, the pleading party must plead an unanticipated development or gap in the written agreement and a breach thereof. The Plaintiffs did neither and Count II should be dismissed in full.

> ### b. The Plaintiffs failed to plead a viable claim for specific performance of the Written Agreement.

Although I find it reasonably conceivable that the Written Agreement is an enforceable contract, it is not reasonably conceivable that the Plaintiffs can establish a right to specific performance of the Written Agreement by the required clear and convincing evidence.

Initially, I disagree with the Plaintiffs that there is no heightened standard for pleading specific performance. There is and that standard is clear: the question before me is "whether it is reasonably conceivable that [the Plaintiffs] can establish a right to specific performance . . . by clear and convincing evidence."[69] I find the answer is "no" because the location of the Strip is ambiguous.

Although ambiguity in contractual terms can be resolved through extrinsic evidence, this Court will not decree specific performance for contracts where the Court has "to supply meaning to the essential elements of the contract."[70] Here, the

---

[68] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) (citations omitted).

[69] *Hastings Funeral Home, Inc.*, 2021 WL 8741648, at *3.

[70] *Mehiel v. Solo Cup Co.*, 2005 WL 1252348, at *7 (Del. Ch. May 13, 2005).

Written Agreement calls for the transfer of ".28 acres of land *being a part of* the property known as Whiteleysburg Road, Harrington, DE" with reference to the parcel identification number for the Vanderwende Farm.[71] The Written Agreement does not, however, specify the exact location of the .28 acres, which would need to be determined through extrinsic evidence. The need to look to extrinsic evidence to clarify an essential term renders the Written Agreement unsuitable for the extraordinary remedy of specific performance.[72] Thus, even reading the well-pled allegations in the Complaint in a light most favorable to the Plaintiffs, it is not reasonably conceivable that the Plaintiffs can prove that the equities support specific performance by clear and convincing evidence.

For these reasons, I find Count I should survive, limited solely to the Written Agreement, but Count II and the requested remedy of specific performance should be dismissed.

### 2. Count III should be dismissed but Count IV should survive.

The Plaintiffs plead Counts III and IV as alternatives to their contract claims, seeking a finding of promissory estoppel and alleging fraudulent inducement, equitable fraud, and negligent misrepresentation. The Defendants argue that these

---

[71] Ex. 8 ¶ 1 (emphasis added).

[72] Having so found, I decline to address the alternative argument that laches bars the relief requested.

claims are dead on arrival because the Defendants were not parties to the underlying transaction and cannot be estopped thereby or held liable for fraud allegedly incurred therewith. I agree for Count III but disagree for Count IV.

"Claims for fraud, fraudulent inducement, negligent misrepresentation, promissory estoppel and estoppel all require a plaintiff to plead that he justifiably or reasonably relied on the defendant's promise."[73] Here, the only promisor for the Oral Agreement was Mr. Vanderwende, on behalf of the Vanderwende Trust. Those promises are not transferrable to the Defendants. Nor are the alleged promises underlying the Written Agreement actionable; those are encompassed in the remaining portion of Count I. Thus, the promissory estoppel claim (Count III), which was expressly premised on the Written Agreement, should be dismissed.

Moving to Count IV, the Plaintiffs seek relief for "representations made regarding [Mr. Vanderwende's] capacity[.]"[74] The Defendants are alleged to have made knowingly false representations when they (1) remained silent about capacity during the discussions before and after the Oral Agreement and the Written Agreement or, alternatively, (2) when Ms. Killmon asserted capacity issues in August of 2020. These false representations underlie the claims in Count IV for

---

[73] *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL 5243950, at *7 (Del. Ch. Sept. 22, 2016) (citations omitted).

[74] D.I. 1 ¶ 112.

fraudulent inducement, equitable fraud, and negligent misrepresentation. I address these claims together because their elements largely overlap.

For a fraudulent inducement claim, the Plaintiffs were required to "plead facts supporting an inference that: (1) the [Defendants] falsely represented or omitted facts that the [Defendants] had a duty to disclose; (2) the [Defendants] knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the [Defendants] intended to induce the [Plaintiffs] to act or refrain from acting; (4) the [Plaintiffs] acted in justifiable reliance on the representation; and (5) the [Plaintiffs were] injured by [their] reliance."[75] To plead negligent misrepresentation or equitable fraud, the Plaintiffs needed to plead factual predicate supporting the same factors, minus knowledge or reckless indifference.[76]

Under Court of Chancery Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." To satisfy Rule 9(b), thus, the Plaintiffs were required to allege in their Complaint: "(1) the time, place, and contents of the false representation; (2) the

---

[75] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006) (citations omitted).

[76] *See Williams v. White Oak Builders, Inc.*, 2006 WL 1668348, at *7 (Del. Ch. June 6, 2006), *aff'd sub nom. Williams v. White Oak Builders*, 913 A.2d 571 (Del. 2006).

identity of the person making the representation; and (3) what the person intended to gain by making the representations."[77]

Through alternative pleading, the Plaintiffs aver that either (1) Ms. Killmon knew Mr. Vanderwende lacked capacity while actively participating in the negotiations and execution of the Written Agreement and related documents and stayed silent, or (2) her representation in August 2020 that he lacked capacity and had lacked capacity "for some time" was false. At the pleading stage, and even with the particularity requirement, I find Count IV adequately pleads alternative claims for fraudulent inducement, equitable fraud, and negligent misrepresentation. Whether those claims will prevail remains to be seen.

### B.    The Defendants' joinder argument is moot.

Under Rule 12(b)(7), the Defendants argue that the Complaint should be dismissed because the Plaintiffs failed to join the mortgagees for the Parties' respective properties. The only claims to which the mortgagees might be interested were the claims for specific performance of the Written Agreement, Oral Agreement, or Post-Death Agreement. I recommend herein that all such claims be dismissed. Thus, I find the joinder issue moot and decline to address it any further.

---

[77] *Abry Partners V, L.P.*, 891 A.2d at 1050 (citations omitted).

## C. The Motion to Amend should be denied.

Having found that the Motion to Dismiss should be granted in part and denied in part, I now turn to the Motion to Amend. The proposed amendments would add additional factual predicate regarding the Post-Death Agreement. For the following reasons, I find the Motion to Amend should be denied.

Amendments are governed by Court of Chancery Rule 15. In this case, the Plaintiffs moved to amend their complaint after the Motion to Dismiss was fully briefed and argued. And the proposed amendments are designed to address the arguments raised in the Motion to Dismiss and accompanying briefing. Thus, I find the Motion to Amend falls under Court of Chancery Rule 15(aaa), which provides:

> [A] party that wishes to respond to a motion to dismiss under Rules 12(b)(6) or 23.1 by amending its pleading must file an amended complaint, or a motion to amend in conformity with this Rule, no later than the time such party's answering brief in response to either of the foregoing motions is due to be filed.[78]

---

[78] Ct. Ch. R. 15(aaa).

The Plaintiffs attempt to compare their request to that made in *TVI Corp. v. Gallagher*, 2013 WL 5809271 (Del. Ch. Oct. 28, 2013). I find *TVI* distinguishable. There, Vice Chancellor Parsons deferred consideration of a motion to amend filed after argument on a motion to dismiss "because, among other reasons, it would not yet be clear whether any claims would be dismissed and, consequently, which standards should govern any requested amendments." *Id.* at *21. But "[t]o avoid requiring a re-filing of the [m]otion to [a]mend and incurring needless delay and additional expense," he considered the motion to amend in the same decision as the motion to dismiss, and treated it as submitted after his disposition of the motion to dismiss. *Id.* I do the same here. But the primary purpose of the motion to amend before Vice Chancellor Parsons was to add a completely new claim, not addressed in the motion-to-dismiss briefing. *Id.* at *21. He properly found that request fell under the more lenient Rule 15(a). *Id.* For the requested addition of allegations in support of a claim addressed in the motion to dismiss briefing, Vice Chancellor Parsons

Under Rule 15(aaa), a plaintiff responding to a motion to dismiss has two options: to "stand on the complaint and answer the motion; or seek leave to amend the complaint before the response to the motion was due."[79]

Under Court of Chancery Rule 15(aaa) where "a party fails to timely file an amended complaint or motion to amend"—like the Plaintiffs here—"and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6)"—like I recommend herein—"dismissal shall be with prejudice . . . unless the Court, for good cause shown, shall find that dismissal with prejudice would not be just under all the circumstances." Thus, the question before me is whether dismissal with prejudice would be just under all the circumstances. Upon review of the totality of the circumstances, I find dismissal should be with prejudice and the Motion to Amend should be denied.

Rule 15(aaa) has been interpreted stringently. But it does not pose an insurmountable bar. For example, in *TVI Corporation v. Gallagher*, Vice Chancellor Parsons found good cause to permit an amendment to a claim that would

looked to Rule 15(aaa). *Id.* Here, the amendments before me are most appropriately addressed under the more stringent Rule 15(aaa).

[79] *Hillblom v. Wilm. Tr. Co.*, 2022 WL 17428978, at *5 (Del. Ch. Dec. 6, 2022) (quoting *Braddock v. Zimmerman*, 906 A.2d 776, 783 (Del. 2006)).

have otherwise been dismissed with prejudice.[80] In *TVI*, the plaintiffs' counsel mistakenly filed an incorrect first amended complaint and did not realize their mistake until shortly before argument on the motion to dismiss. Thus, "[r]oughly contemporaneously with the oral argument" the plaintiffs moved to amend.[81] After ruling on the motion to dismiss, in the same decision, Vice Chancellor Parsons addressed the proposed amendments. Most related to a wholly new claim and were considered under Rule 15(a). But one was "the addition of the particularized factual allegation regarding the misappropriation claim, [which] would affect [the Court's] decision to dismiss that claim and, therefore, [was] assessed under Rule 15(aaa)."[82] The mistaken filing and lack of undue delay or prejudice to the defendants convinced Vice Chancellor Parsons to permit the amendment.

This case has no such extenuating circumstances. Rather, the Plaintiffs made the tactical decision to rest on the Complaint and oppose the Motion to Dismiss through briefing. Only after oral argument on the Motion to Dismiss, did the Plaintiffs move to amend the Complaint to address the challenges in the Motion to Dismiss. Such has consequences: dismissal with prejudice. The Plaintiffs have failed to articulate good cause to relieve them of those consequences and I

---

[80] *TVI Corp. v. Gallagher*, 2013 WL 5809271, at *23.

[81] *Id.* at *20.

[82] *Id.* at *21.

recommend the Motion to Amend be denied and the dismissal recommended herein be with prejudice.

## III.   CONCLUSION

For the above reasons, I find the Motion to Dismiss should be granted in part and denied in part. Count I, limited to the Written Agreement, and Count IV, in full, should survive and proceed to discovery. Any remaining portions of Count I and Counts II-III should be dismissed, as should the requested remedy of specific performance. Further, the Motion to Amend should be denied and the dismissal recommended herein should be with prejudice.

This is a final report and exceptions may be filed under Court of Chancery Rule 144.